**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CUMBERLAND TRUCK EQUIPMENT CO., et al., ) ) ) Plaintiffs, ) ) vs. ) ) DETROIT DIESEL CORP., et al., ) ) Defendants. | Case No. 06 C 4623 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Detroit Diesel Corporation (DDC) is a defendant in a class action suit currently pending in the United States District Court for the Eastern District of Michigan brought by a group of truck sales and service dealers formerly classified as DDC authorized dealers. The plaintiffs in the class action allege that DDC and its distributors violated the Sherman Act by entering into a conspiracy to eliminate competition between the plaintiffs and certain other dealers, distributors, and repair shops. DDC has served subpoenas on non-parties Navistar International Corporation and International Truck and Engine Corporation (collectively, International) seeking documents related to their truck and engine manufacturing business. International has moved to quash the subpoenas. For the foregoing reasons, the Court grants the motion in part and denies it in part.

### Discussion

DDC's subpoenas originally contained forty-nine separate document requests. After International filed its motion to quash, the Court directed the parties to meet and confer to attempt to narrow the issues in dispute. The parties have done so, and have informed the Court

via joint letter that they now disagree regarding fourteen of the requests: request numbers one through three, ten through thirteen, seventeen, eighteen, thirty-five, thirty-six, thirty-eight, thirty-nine, and forty-seven.

International's objections to the subpoena are based on the confidentiality of the documents, the relevance of the documents, and the burden of production. Federal Rule of Civil Procedure 45(c)(3)(A) and (B) allows a court to quash or modify a subpoena for documents if it subjects a party to undue burden or requires the production of "a trade secret or other confidential research, development, or commercial information." To determine whether a subpoena is unduly burdensome, a court may weigh a number of factors, including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed." *WM High Yield v. O'Hanlon*, No. IP-05-115-Misc., 2006 WL 3197152, at * 4 (S.D. Ind. Feb. 17, 2006) (citing *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicecenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662-63 (D. Kan. 2003)). If the party to whom the subpoena is directed establishes that confidential information is being sought, "the burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 534 (C.D. Ill. 1991) (citation omitted). Finally, non-party status is a significant factor a court must consider when assessing undue burden for the purpose of a ruling on a motion to quash a Rule 45 subpoena. *United States v. Amerigroup Illinois, Inc.*, No. 02 C 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005). Applying these standards, the Court will address in

turn each disputed production request.

**Request One**

In request one, DDC seeks documents related to International's decision to stop offering DDC engines in its trucks. DDC has agreed to narrow this request to four specific categories relating to International's internal communications: (1) how International trucks with DDC engines then-currently "on-the-road" would continue to be serviced; (2) how International intended to work with its dealers to implement the decision to drop DDC; (3) how International intended to convert customers of International heavy-duty trucks containing DDC engines to competing engine manufacturers; and (4) how International's decision would place its dealers in violation of their DDC agreements.

International continues to object to this narrowed request on the grounds that it is unduly burdensome, seeks irrelevant information, and would force International to divulge confidential information to a competitor. DDC argues that documents showing International's internal decision-making process are relevant to DDC's defense because they will show "the decision-making, and implementation of market-changing actions by International (and others) that led to DDC's competitive response." DDC Opp. at 7. The Court fails to see how International's internal decision-making process – which was, almost by definition, unknown to DDC at the time it took the actions of which plaintiffs complain – has any bearing on DDC's response to changing conditions in the heavy truck market. DDC argues that evidence of International's internal decision-making is necessary to put DDC's actions "in their proper context and relates directly to the reasonableness of DDC's decision not to approve the renewal of the DDC Dealer Agreements." *Id.* Though evidence regarding changing market conditions may be relevant,

3

International's internal decision-making that led to the changing conditions is not. Contrary to DDC's assertions, such information would not provide any relevant context for DDC's actions. The Court grants International's motion to quash request one.

**Request Two**

In request two, DDC seeks documents related to International's communications with heavy-duty truck dealers regarding its decision to stop offering DDC engines in its heavy-duty trucks. International has agreed to produce "communications between International and its dealers conveying International's decision to no longer offer DDC engines in International heavy-duty trucks." DDC seeks, in addition, documents relating to communications with dealers related to International's "decision to stop offering [DDC] engines." For the reasons stated in the Court's discussion of request one, such documents are not relevant to the underlying litigation. The Court grants International's motion to quash request two to the extent it seeks production of documents beyond those International has agreed to produce in the parties' November 29, 2006 joint letter to the Court.

**Request Three**

In request three, DDC seeks documents related to International's communications with manufacturers of heavy-duty engines regarding its decision to stop offering DDC engines in its trucks. International has agreed to produce "communications between DDC and International conveying International's decision to no longer offer DDC engines in International's heavy-duty trucks." DDC continues to seek documents regarding International's decision to stop offering DDC engines in its heavy-duty trucks. For the reasons stated in the Court's discussion of request one, such documents are not relevant to the underlying litigation. The Court grants

International's motion to quash request three to the extent it seeks production of documents beyond those International has agreed to produce in the parties' November 29, 2006 joint letter to the Court.

**Request Ten**

In request ten, DDC seeks documents related to International's communications with Cummins, Caterpillar, or any other engine manufacturer (other than DDC) regarding "arrangements to provide-heavy duty truck engines, or service, training, marketing, promotion, pricing, or dealer support for the heavy-duty engines installed in [International's] heavy-duty trucks." International objects to this request, claiming that it is unduly burdensome; it claims it would be required to search the files of dozens of individuals and produce thousands of documents to respond to this request. International also argues that its communications with engine manufacturers other than DDC are irrelevant because DDC was not privy to those communications when it took the actions of which the plaintiffs complain in the underlying litigation. The Court agrees that this request is overly broad. It would force International to search for and turn over every scrap of paper (not to mention e-mail) concerning its communications with its engine manufacturers regarding virtually every facet of their relationship. The potential relevance of the information sought does not outweigh the substantial burden that would be imposed on International. The Court grants International's motion to quash request ten.

**Request Eleven**

In request eleven, DDC seeks documents related to International's "sales incentive programs, payments or other arrangements for heavy-duty trucks, heavy-duty engines or

replacement parts for [DDC] engines, including but not limited to any discounts, rebates, promotional allowances, or other compensation to your dealers or their customers." International has agreed to produce documents concerning sales incentive programs for DDC replacement parts if DDC agrees to modify the protective order governing the underlying litigation to limit experts' access to the information. DDC continues to seek all documents responsive to request eleven, arguing that "evidence of sales incentive programs for heavy-duty trucks and heavy-duty engines [is] directly relevant to determining the scope of any threat to DDC from International's conversion attempts and the reasonableness of DDC's response to the threats." The Court agrees that the documents DDC seeks in this request are relevant to its defense that its competitive response to International's engine conversion was reasonable. Moreover, International's concerns about the confidential nature of the requested information are addressed by the protective order entered in the underlying litigation. Under the terms of that protective order, International can designate documents it produces "highly confidential," thereby protecting the documents from disclosure to any DDC employee. International's speculation that it could suffer harm as a result of disclosure to a retained expert is not sufficient to preclude compliance with the subpoena. Moreover, any expert that will receive International's "highly confidential" information will also be bound by the term's of the protective order entered by the District Court in Michigan. The Court denies International's motion to quash request eleven.

**Request Twelve**

In request twelve, DDC seeks documents related to its "plans or strategies in the conversion of purchasers of heavy-duty trucks from [DDC] to other heavy-duty engines." For

6

the same reasons articulated in the discussion of request one, International's internal "plans or strategies" are not sufficiently relevant to the underlying litigation to warrant production. The Court grants International's motion to quash request twelve.

**Request Thirteen**

In request thirteen, DDC seeks "all documents" related to an April 15, 2002 memo from International's Vice-President and General Manager of International's Heavy Vehicle Center to International's dealer network regarding the conversion of purchasers of heavy-duty trucks from DDC engines to other heavy-duty engines. This request is overly broad and would encompass information not sufficiently relevant to the underlying litigation to warrant production. As just one example, the request would call for internal drafts of the April 15, 2002 memo showing International's strategy and thought processes. As previously discussed, such information is not relevant. The Court grants International's motion to quash request thirteen, but orders International to produce a copy of the April 15, 2002 memo and any follow up communications with International's dealer network relating to it.

**Request Seventeen**

In request seventeen, DDC seeks documents "sufficient to show [International's] annual revenue for the sale of heavy-duty trucks by year and by model." DDC has agreed to limit this request to "documents sufficient to show International's quarterly revenue for the sale of heavy-duty trucks that carried or now could carry DDC engines." International has agreed to produce documents sufficient to show its quarterly revenue for the sale of trucks powered by engines in the 12-16 liter displacement range, which is the particular type of engine competitive with DDC's engines. DDC has rejected this offer and continues to seek all documents responsive to

7

its now-narrowed request. International has stated that it does not believe it maintains financial records that show the information sought by DDC. The parties apparently agree that the requested information is relevant, and International does not contend that its production would be unduly burdensome. Rather, it argues that it does not "believe" it maintains such information. The Court denies International's motion to quash request seventeen and directs International to produce the requested information to the extent it can be located after a diligent search. If International does not maintain the requested information, it should still produce the documents it has agreed to produce in the parties' November 29, 2006 letter to the Court.

**Request Eighteen**

In request eighteen, DDC seeks "all documents that relate to strategic plans, long-range plans or business plans regarding the consolidation of your dealer network." DDC contends that it needs the information because "DDC may be able to establish that International intended to eliminate some of the dealers who were not renewed as DDC dealers; any such dealers could not claim to have been harmed by DDC and its distributors beyond the date on which they would have been eliminated by International as a truck dealer." If this is the purpose for which DDC seeks the information requested, request eighteen is overly broad and would include the production of documents not relevant to the underlying litigation. The Court grants International's motion to quash request eighteen in part and orders International to produce documents sufficient to identify any dealers it did not renew and the date on which the non-renewals became effective.

**Requests Thirty-Five, Thirty-Six, Thirty-Eight, and Thirty-Nine**

In requests thirty-five, thirty-six, thirty-eight, and thirty-nine, DDC seeks documents

sufficient to show: (a) engine replacement parts that International sells for DDC engines; (b) sales by year and by dealer for those parts since August 1, 2001; and (c) the prices charged for those parts since August 1, 2001. International agreed to produce information responsive to subparts (a) and (b), and also subpart (c) if the protective order in the underlying litigation is modified. As discussed above, the protective order is sufficient to protect International's confidential information. The Court denies International's motion to quash
the subpoena with regard to these requests.

**Request Forty-Seven**

In request forty-seven, DDC seeks documents related to communications between International and the named plaintiffs "including but not limited to contracts, agreements, and sales documents . . . involving heavy-duty trucks, heavy-duty engines or replacement parts for [DDC] engines." These documents are clearly relevant to potential defenses DDC may assert to plaintiffs' contentions that DDC wrongfully terminated their dealer agreements. International objects to this request on the grounds that it is unduly burdensome. Any burden, however, is outweighed by DDC's need for this information. International's motion to quash request forty-seven is denied.

**Conclusion**

For the reasons stated above, the Court grants International's motion to quash in part, and denies it in part. International is ordered to produce documents responsive to those requests that have not been quashed within thirty days of entry of this order.

_____
MATTHEW F. KENNELLY

9

Date: December 13, 2006                                         United States District Judge